## No. 12-55278

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

ROBERT ROUSE AND VICTORIA ROUSE,

*Plaintiffs-Appellees*,

v.

WACHOVIA MORTGAGE, FSB, A DIVISION OF WELLS FARGO BANK, N.A., F/K/A WORLD SAVINGS BANK

*Defendant-Appellant*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

---

# OPENING BRIEF FOR DEFENDANT-APPELLANT WELLS FARGO BANK, N.A.

---

Robin C. Campbell
Robert Collings Little
Yaw-Jiun (Gene) Wu
ANGLIN FLEWELLING RASMUSSEN
  CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue
Suite 600
Pasadena, CA  91101-2459
(626) 535-1900

September 17, 2012

Robert A. Long, Jr.
*Lead Counsel*
Kristen E. Eichensehr
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004–2401
(202) 662–6000

*Counsel for Defendant-Appellant
Wells Fargo Bank, N.A.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant Wachovia Mortgage, a division of Wells Fargo Bank, N.A., successor to by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB, states that it is a division of Wells Fargo Bank, N.A.  Wells Fargo Bank, N.A. identifies WFC Holdings Corporation, Greater Bay Bancorp, Placer Sierra Bancshares, Century Bancshares, Inc., Charter Holdings, Inc., and IBID, Inc. as parent corporations, and it also identifies Wells Fargo and Company as a parent corporation and a publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ................................................................................... iv

JURISDICTIONAL STATEMENT ......................................................................... 1

ISSUES PRESENTED ............................................................................................. 2

STATUTES AND REGULATIONS INVOLVED ................................................. 2

STATEMENT OF THE CASE ................................................................................ 4

STATEMENT OF FACTS ....................................................................................... 5

      A.    National Banks ...................................................................................... 5

      B.    This Case .............................................................................................. 8

SUMMARY OF THE ARGUMENT ...................................................................... 10

ARGUMENT ........................................................................................................... 15

    A NATIONAL BANK'S CITIZENSHIP FOR DIVERSITY
    PURPOSES IS DETERMINED SOLELY BY THE LOCATION OF
    ITS MAIN OFFICE ........................................................................................ 15

      A.    The Supreme Court's Decision In *Schmidt* Holds That A
             National Bank Is A Citizen Of The State In Which Its Main
             Office Is Located ............................................................................... 16

      B.    Following *Schmidt*, The Courts of Appeals Have Uniformly
             Held That A National Bank's Citizenship Is Determined By
             The Location Of Its Main Office, Not Its Principal Place Of
             Business ............................................................................................. 21

      C.    An Analysis Of The Evolution Of Sections 1348 and 1331
             Leads To The Conclusion That A National Bank's Citizenship,
             For Diversity Purposes, Is Determined By The Location Of Its
             Main Office ........................................................................................ 24

1.    Between 1863 and 1948, Congress Repeatedly Modified The Jurisdictional Provisions Applicable To National Banks ........................................................................... 24

2.    The Language Of Section 1348 Does Not Link National Bank Citizenship To The Citizenship Of State Banks Or Corporations ............................................................. 29

3.    Even If Section 1348 Had Retained A Principle Of "Jurisdictional Parity" With State Banks, The Relevant Time For Determining Parity Would Be 1948, When Both National Banks And State Banks Were Citizens Of A Single State .......................................................... 31

4.    Section 1332(c)(1) Does Not Link National Bank Citizenship To Corporate Citizenship ...................................... 34

5.    Any Policy Arguments For "Complete" Parity Are Properly Addressed To Congress ............................................ 35

D.    Pre-*Schmidt* Precedents Do Not Support A Different Result ............ 37

1.    *American Surety* Does Not Govern The Outcome Of This Case ................................................................................... 37

2.    The Other Pre-*Schmidt* Cases Relied On By The District Court Are Distinguishable ...................................... 43

E.    The District Court Erred In Holding That The Parties Are Not Diverse............................................................................................... 47

CONCLUSION .................................................................................................... 48

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Albarran v. Wells Fargo Bank*,
No. SACV 11-00548-JVS, 2011 U.S. Dist. LEXIS 59635
(C.D. Cal. May 26, 2011) ...................................................................23

*Am. Surety Co. v. Bank of California*,
133 F.2d 160 (9th Cir. 1943) ....................................................passim

*Atienza v. Wells Fargo Bank*,
No. C 10-03457 RS, 2011 U.S. Dist. LEXIS 1738 (N.D. Cal. Jan. 4,
2011) ...................................................................................................24

*Leather Mfrs.' Bank v. Cooper*,
120 U.S. 778 (1887)............................................................................25

*Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab &
Transfer Co.*,
276 U.S. 518 (1928)............................................................................32

*Cal. Dep't of Water Res. v. Powerex Corp.*,
533 F.3d 1087 (9th Cir. 2008) .............................................................2

*California ex rel. Bates v. Mortg. Elec. Registration Sys., Inc.*,
No. 2:10-cv-01429-GEB-CMK, 2010 U.S. Dist. LEXIS 81650
(E.D. Cal. July 21, 2010) ...................................................................24

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*,
556 U.S. 635 (2009)..............................................................................1

*Citizens & S. Nat'l Bank v. Bougas*,
434 U.S. 35 (1977)..............................................................................17

*Cochran v. Wachovia Bank, N.A.*,
No. CV 10-018 CAS, 2010 U.S. Dist. LEXIS 38379
(C.D. Cal. Mar. 9, 2010) ...................................................................24

*DeLeon v. Wells Fargo Bank, N.A.*,
729 F. Supp. 2d 1119 (N.D. Cal. 2010).............................................24

*Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*,
    470 F. Supp. 2d 312 (S.D.N.Y. 2006) ........................................................passim

*Firstar Bank, N.A. v. Faul*,
    253 F.3d 982 (7th Cir. 2001) ....................................................................passim

*Flores v. Wells Fargo Bank, N.A.*,
    No. 3:11-cv-6619 JSC, 2012 U.S. Dist. LEXIS 32648
    (N.D. Cal. Mar. 12, 2012)............................................................................23, 42

*Forsythe v. Wells Fargo Bank, N.A.*,
    No. SACV 12-001390CJC(JPRx), 2012 U.S. Dist. LEXIS 44031
    (C.D. Cal. Mar. 28, 2012) ..........................................................................23, 39

*Granada v. Wachovia Fin. Servs. Inc.*,
    No. 2:11-cv-10772-JHN-JCGx, 2012 U.S. Dist. LEXIS 54149
    (C.D. Cal. Apr. 18, 2012) ..................................................................................23

*Guinto v. Wells Fargo Bank*, No. CIV. S-11-372 LKK/GGH, 2011 U.S.
    Dist. LEXIS 114986 (E.D. Cal. Oct. 5, 2011) ..................................................24

*Hargrow v. Wells Fargo Bank N.A.*,
    No. 11-1806, 2012 U.S. App. LEXIS 13638 (6th Cir. July 3, 2012)................23

*Harmston v. City & Cnty. of San Francisco*,
    627 F.3d 1273 (9th Cir. 2010) ............................................................................2

*Heard-Rodriguez v. World Savings Bank, FSB*,
    No. SACV 12-00129-CJC, 2012 U.S. Dist. LEXIS 43529
    (C.D. Cal. Mar. 28, 2012) ................................................................................39

*Hertz Corp. v. Friend*,
    130 S. Ct. 1181 (2010)......................................................................................32

*Hicklin Eng'g, L.C. v. Bartell*,
    439 F.3d 346 (7th Cir. 2006) ............................................................11, 22, 45

*Horton v. Bank One, N.A.*,
    387 F.3d 426 (5th Cir. 2004) ............................................................43, 45, 46

*Johnson v. Columbia Props. Anchorage, LP*,
    437 F.3d 894 (9th Cir. 2006) ..............................................................................9

*Kasramehr v. Wells Fargo Bank N.A.*,
No. CV 11-0551 GAF, 2011 U.S. Dist. LEXIS 52930
(C.D. Cal. May 17, 2011) ...................................................................23

*Kho v. Wells Fargo & Co.*, No. SACV 12-0847 DOC (AGRx), 2012 U.S.
Dist. LEXIS 110957 (C.D. Cal. Aug. 6, 2012)....................................23

*Kruso v. Int'l Tel. & Tel. Corp.*,
872 F.2d 1416 (9th Cir. 1989) ...........................................................16

*Louisville, C. & C. R.R. Co. v. Letson*,
43 U.S. 497, 2 How. 497 (1844).........................................................32

*Lowdermilk v. U.S. Bank, N.A.*,
479 F.3d 994 (9th Cir. 2007) ..............................................................42

*Marzette v. Provident Savings Bank, F.S.B.*, No. 2:11-CV-2089 JAM-CKD,
2011 U.S. Dist. LEXIS 130657 (E.D. Cal. Nov. 10, 2011)................23

*MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*,
512 U.S. 218 (1994)....................................................................13, 31

*McKenna v. Wells Fargo Bank, N.A.*,
No. 11-1650, 2012 U.S. App. LEXIS 17694
(1st Cir. Aug. 16, 2012) .................................................................22, 23

*Mercantile Nat'l Bank at Dallas v. Langdeau*,
371 U.S. 555 (1963)............................................................................25

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) (en banc) ........................................41, 43

*Mireles v. Wells Fargo Bank, N.A.*,
No. CV 11-07720 MMM, 2012 U.S. Dist. LEXIS 3871
(C.D. Cal. Jan. 11, 2012) ....................................................................23

*Moreno v. Wells Fargo*,
No. C -11-05189 EDL, 2011 U.S. Dist. LEXIS 146195
(N.D. Cal. Dec. 20, 2011)...................................................................23

*Mount v. Wells Fargo Bank, N.A.*,
No. CV 08-6298, 2008 U.S. Dist. LEXIS 98193 (C.D. Cal. Nov. 24,
2008) ...................................................................................................24

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
    513 U.S. 251 (1995)..................................................................................6

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989)................................................................................26

*Ngiraingas v. Sanchez*,
    495 U.S. 182 (1990)................................................................................31

*OneWest Bank, FSB v. Joam, LLC*,
    No. 10-CV-1063 (JG) (SMG), 2011 U.S. Dist. LEXIS 150999
    (E.D.N.Y. July 26, 2011) ........................................................................23

*Peralta v. Countrywide Home Loans, Inc.*,
    375 Fed. Appx. 784 (9th Cir. 2010)........................................................42

*Perrin v. United States*,
    444 U.S. 37 (1979)..................................................................................31

*Petri v. Commercial Nat'l Bank of Chicago*,
    142 U.S. 644 (1892)................................................................................25

*S. Ry. Co. v. Allison*,
    190 U.S. 326 (1903)................................................................................39

*Saberi v. Wells Fargo Home Mortg.*,
    No. 10CV1985 DMS (BGS), 2011 U.S. Dist. LEXIS 5286
    (S.D. Cal. Jan. 20, 2011) ........................................................................24

*Sami v. Wells Fargo Bank, et al.*,
    No. C 12-00108 DMR, 2012 U.S. Dist. LEXIS 38466
    (N.D. Cal. Mar. 21, 2012)......................................................................23

*St. Louis & San Francisco Ry. Co. v. James*,
    161 U.S. 545 (1896)................................................................................40

*Taheny v. Wells Fargo Bank, N.A.*, No. CIV. S-10-2123 LKK/EFB, 2012
    U.S. Dist. LEXIS 47195 (E.D. Cal. Apr. 3, 2012) ..............................24

*Tse v. Wells Fargo Bank, N.A.*,
    No. C10-4441 THE, 2011 U.S. Dist. LEXIS 6796 (N.D. Cal. Jan. 19,
    2011) .......................................................................................................23

*United States v. Fausto*,
    484 U.S. 439 (1988)................................................................45

*Uriarte v. Wells Fargo Bank, N.A.*,
    No. 11-cv-2082 - IEG (WVG), 2011 U.S. Dist. LEXIS 127497
    (S.D. Cal. Nov. 3, 2011) ......................................................24

*Wachovia Bank, N.A. v. Schmidt*,
    546 U.S. 303 (2006)........................................................passim

*Watters v. Wachovia Bank, N.A.*,
    550 U.S. 1 (2007)..............................................................5, 6

*Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*,
    653 F.3d 702 (8th Cir. 2011) ............................................passim

*Williamson v. Osenton*,
    232 U.S. 619 (1914)............................................................26

*Kim v. Wells Fargo Bank, N.A.*,
    No. 5:12-cv-02066, 2012 U.S. Dist. LEXIS 108596
    (N.D. Cal. Aug. 2, 2012)..................................................23, 41

STATUTES

11 U.S.C. § 11(a)(1) (1940) ...................................................41

12 U.S.C. § 1 *et seq.*..............................................................5

12 U.S.C. § 21a ..................................................................6, 7

12 U.S.C. § 22 ......................................................................6

12 U.S.C. § 24 ..............................................................passim

12 U.S.C. § 30(b) ...............................................................7, 36

12 U.S.C. § 36(g)(3)(B) ..........................................................6

12 U.S.C. § 85 .....................................................................37

12 U.S.C. § 1831u(d)(1) .......................................................7, 37

28 U.S.C. § 1291 ...................................................................1

28 U.S.C. § 1331 ................................................................................1, 4

28 U.S.C. § 1332 .................................................................................passim

28 U.S.C. § 1332(a) ...........................................................................1, 15

28 U.S.C. § 1332(c)(1) ........................................................................passim

28 U.S.C. § 1348 .................................................................................passim

28 U.S.C. § 1367(c)(3) ...................................................................1, 10, 47

Act of Aug. 13, 1888, § 4, 25 Stat. 436 ........................................27

Act of Feb. 25, 1863, § 11, 12 Stat. 668 .........................................7

Act of Feb. 25, 1863, § 59, 12 Stat. 681 ........................................24

Act of July 12, 1882, § 4, 22 Stat. 163 ......................................12, 25, 30

Act of Mar. 3, 1887, § 4, 24 Stat. 554-55 ...........................12, 26, 28, 30

Act of Mar. 3, 1911, § 24 (Sixteenth), 36 Stat. 1091-93 ...........12, 27, 28, 30

Act of Mar. 3, 1911, § 294, 36 Stat. 1167 ..............................28

Act of June 25, 1948, 62 Stat. 933 ...........................................29

Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 403, 120 Stat. 1966, 1974 (codified at 12 U.S.C. § 1464(x))............................37

Glass-Steagall Act, 1933, § 23, 48 Stat. 189-90 .......................................7

McFadden Act (Branch Banks), 1927, § 7(c), 44 Stat. 1228.....................................7

Riegle-Neal Interstate Banking and Branching Efficiency Act of 1994, § 101, 108 Stat. 2339 .......................................7

## OTHER AUTHORITIES

12 C.F.R. § 5.40(d)(2)(ii) (2012) ......................................................7

Brief for Petitioner, *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006) (No. 04-1186), 2005 WL 1996311 ......................................42

Brief for Respondent, *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006) (No. 04-1186), 2005 WL 2646357 ....................................................................42

Office of the Comptroller of the Currency, Interpretive Letter No. 952, 2003 WL 23221430 (Oct. 23, 2002).........................................................6, 7, 20, 46

Fed. R. App. P. 4(a)(1)(A) ...........................................................................................1

Financial Services Regulatory Relief Act of 2005, H.R. 3505, 109th Cong., § 213 (2005).............................................................................................37

S. Rep. No. 85-1830, *reprinted in* 1958 U.S.C.C.A.N. 3099 (1958) ......................41

Transcript of Oral Argument, *Schmidt*, 546 U.S. 303 (No. 04-1186), 2005 WL 3358081 ................................................................................................20

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellees Robert and Victoria Rouse ("the Rouses") filed a complaint in California state court raising both state-law and federal-law claims. Wells Fargo removed the case to federal district court, asserting federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Notice of Removal (Dkt. No. 1), at 2-9. The district court granted Wells Fargo's motion to dismiss the complaint in its entirety, but granted plaintiffs leave to file an amended complaint. ER 27-28. The Rouses filed an amended complaint raising only state-law claims. ER 59. In an order filed on January 13, 2012, the district court held that it lacked diversity jurisdiction because Wells Fargo and the Rouses are both citizens of California. ER 1. The district court declined to exercise supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(c)(3), and remanded the case to state court. ER 23-24.

Wells Fargo filed a timely appeal on February 8, 2012. ER 29; Fed. R. App. P. 4(a)(1)(A). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009) (district court orders remanding a case to state court after declining to exercise supplemental jurisdiction are appealable). Because remand orders are "final decisions" for purposes of 28 U.S.C. § 1291, this Court has jurisdiction to review the district

court's determination that it lacks diversity jurisdiction over this case. *See Harmston v. City & Cnty. of San Francisco*, 627 F.3d 1273, 1278 (9th Cir. 2010) ("[R]emand orders are 'final' for purposes of sweeping in prior non-final orders"); *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1096 (9th Cir. 2008) (same).[1]

## ISSUES PRESENTED

1. Whether, pursuant to 28 U.S.C. § 1348, a national bank is "located" in, and thus a citizen of, only the state in which its main office (as designated in its articles of association) is located, or whether it is also a citizen of the state where it has its principal place of business.

2. Whether the district court erred in holding that it lacked diversity jurisdiction over this case and therefore had discretion to remand the case to state court.

## STATUTES AND REGULATIONS INVOLVED

1. Section 1348 of Title 28, U.S. Code, provides:

**Banking association as party**

The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to

---

[1] On February 22, 2012, this Court issued an order to show cause why the appeal should not be dismissed for lack of jurisdiction. On June 5, 2012, after considering Wells Fargo's response, the Appellate Commissioner discharged the order to show cause and ordered briefing to resume.

wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

2. Section 1332 of Title 28, U.S. Code, provides, in relevant part:

**Diversity of citizenship; amount in controversy; costs**

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –
  (1) citizens of different States;
  (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
  (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
  (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
. . .
(c) For the purposes of this section and section 1441 of this title –
  (1) a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of –
    (A) every State and foreign state of which the insured is a citizen;

3

(B) every State and foreign state by which the insurer has been incorporated; and

(C) the State or foreign state where the insurer has its principal place of business; . . .

## STATEMENT OF THE CASE

On May 16, 2011, the Rouses filed suit against the Defendant-Appellants Wells Fargo and NDeX West LLC in the Superior Court of the State of California. ER 152. The Rouses' complaint listed twenty-three causes of action arising under both state and federal law and relating to the Rouses' home loan and deed of trust. ER 178-216. On June 10, 2011, Wells Fargo removed the case to the U.S. District Court for the Central District of California on the basis of both federal question and diversity jurisdiction. 28 U.S.C. §§ 1331, 1332(a); Notice of Removal (Dkt. No. 1), at 2-9.

After the case was removed, Wells Fargo filed a motion to dismiss the complaint for, *inter alia*, failure to state a claim. Motion to Dismiss (Dkt. No. 9). The district court granted the motion and dismissed the complaint in its entirety, with leave to amend. ER 27.

On September 20, 2011, the Rouses filed an amended complaint raising only state law claims. ER 59. Wells Fargo filed a motion to dismiss the amended complaint, Second Motion to Dismiss (Dkt. No. 20), as well as a motion to strike portions of the Complaint, Motion to Strike (Dkt. No. 22).

4

On November 4, 2011, the district court issued an order to show cause why the case should not be remanded to state court for lack of diversity jurisdiction, in view of the fact that the amended complaint asserts only state-law claims. ER 25. After briefing, the district court held that Wells Fargo is a citizen of California, as are the Rouses, and that diversity jurisdiction is therefore lacking. ER 23. The Court issued an order on January 13, 2012, remanding the case to the California Superior Court. ER 24. The district court denied as moot Wells Fargo's motions to dismiss and to strike. *Id.*

Wells Fargo filed a timely notice of appeal on February 8, 2012. ER 29.

## STATEMENT OF FACTS

### A.    National Banks

Wells Fargo is a national bank with its main office in Sioux Falls, South Dakota. National banks are chartered by the federal government and governed by the National Bank Act ("NBA"), 12 U.S.C. § 1 *et seq.*, which Congress first adopted in 1864.[2]  A national bank's federal charter distinguishes it from a state bank, which is chartered under the laws of a state.

The NBA gives national banks authority to "carry on the business of banking," 12 U.S.C. § 24 (Seventh), and charges the Office of the Comptroller of

---

[2] The Act was initially titled "An Act to provide a National Currency"; Congress changed the title to "the National Bank Act" in 1874. *See Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 n.3 (2007).

the Currency ("OCC") to "oversee[] the operations of national banks and their interactions with customers."  *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6 (2007).  Thus, in addition to being subject to the provisions of the NBA, national banks are governed and overseen by the OCC.  *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256-57 (1995).

To become "a body corporate," a national bank must file articles of association and an organization certificate with the OCC.  12 U.S.C. § 24.  As the Supreme Court explained in *Schmidt*, "A national bank, on formation, must designate, in its organization certificate and articles of association, the 'place where its operations of discount and deposit are to be carried on.'"  *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 n.1 (2006) (quoting 12 U.S.C. § 22 (Second) and citing *id.* § 21).  Thereafter, "[t]he place so designated serves as the bank's 'main office,'" and "[t]he State in which the main office is located qualifies as the bank's 'home State' under the banking laws."  *Id.* (citing 12 U.S.C. § 36(g)(3)(B)).  There is no provision for a national bank to amend its organization certificate.[3]  A national bank may change the location of its main office only by amending its articles of association, and then only in limited circumstances

---

[3] *See* Office of the Comptroller of the Currency, Interpretive Letter No. 952, 2003 WL 23221430, at *4 (Oct. 23, 2002) (citing 12 U.S.C. § 21a, regarding amendments to the articles of association, and noting that no similar provisions exist for amending the organizing certificate).

prescribed by federal law.  *See* 12 U.S.C. §§ 21a, 30(b); 12 C.F.R. § 5.40(d)(2)(ii) (2012).[4]

National banks "originally lacked authority to operate branch offices." *Schmidt*, 546 U.S. at 307 n.2 (citing Act of Feb. 25, 1863, § 11, 12 Stat. 668). Over time, Congress enacted exceptions that permitted limited operation of branch offices.  *See id.* (citing McFadden Act (Branch Banks), 1927, § 7(c), 44 Stat. 1228; Glass-Steagall Act, 1933, § 23, 48 Stat. 189-90).  However, "[n]ot until 1994 did Congress grant national banks broad authority to establish branch offices across state lines."  *Id.* (citing Riegle-Neal Interstate Banking and Branching Efficiency Act of 1994, § 101, 108 Stat. 2339).  Widespread interstate branch banking opened

---

[4] A national bank may not relocate its main office to a location that is more than 30 miles from the city or town limits of its existing main office.  *See* 12 U.S.C. § 30(b) ("Any national banking association, upon written notice to the Comptroller of the Currency, may change the location of its main office to any authorized branch location within the limits of the city, town, or village in which it is situated, or, with a vote of shareholders owning two-thirds of the stock of such association for a relocation outside such limits and upon receipt of a certificate of approval from the Comptroller of the Currency, to any other location within or outside the limits of the city, town, or village in which it is located, *but not more than thirty miles beyond such limits*." (emphasis added)).  In the case of an interstate bank merger, the resulting national bank, with the approval of federal banking authorities, may select a main office or branch of either of the merging banks as a main office.  *See* 12 U.S.C. § 1831u(d)(1) ("A resulting bank may, subject to the approval of the appropriate Federal banking agency, retain and operate, as a main office or a branch, any office that any bank involved in an interstate merger transaction was operating as a main office or a branch immediately before the merger transaction."); *see* Office of the Comptroller of the Currency, Interpretive Letter No. 952, at *3.

the door to the question presented in this case by creating a possibility that a bank's main office and principal place of business could be in different states.

### B.    This Case

The Rouses filed suit against Wachovia Mortgage, a division of Wells Fargo Bank, N.A., and NDeX West LLC in San Bernardino County Superior Court, asserting claims under federal and state law relating to the Rouses' home loan and deed of trust.  ER 152.  Wells Fargo removed the case to federal court on the basis of both federal question and diversity jurisdiction.  Notice of Removal (Dkt. No. 1), at 2-9.  Wells Fargo, joined by NDeX West, then filed a motion to dismiss, which the district court granted with leave to amend.  ER 27-28.  The Rouses filed the operative amended complaint, raising only state law claims.  ER 49.

Acting *sua sponte*, the district court issued an Order to Show Cause why the case should not be remanded to state court for lack of diversity jurisdiction.  ER 25.  The district court noted that the Rouses' amended complaint did not raise any federal claims.  ER 25.  The district court determined that (i) the Rouses are citizens of California, (ii) NDeX West is not a citizen of California, and (iii) Wells Fargo's main office is in South Dakota and its principal place of business is in

California.[5]  ER 26.  Based on these facts, the court stated that it was "uncertain" whether Wells Fargo is diverse from the Rouses, ER 2.

After briefing, the district court held that Wells Fargo is a citizen of both South Dakota, where its main office is located, and of California, where its principal place of business is located.  ER 23.  The district court concluded that it was bound to reach this result in light of this Court's decision in *American Surety Co. v. Bank of California*, 133 F.2d 160 (9th Cir. 1943).  In *American Surety*, the Ninth Circuit considered whether a national bank is "located," for diversity purposes, in any state in which it has a branch office.  *Id.* This Court answered the question in the negative, concluding that a national bank is "a citizen *only* of the state in which its principal place of business is located."  *Id.* at 162 (emphasis added).  The district court rejected Wells Fargo's argument that the Supreme Court's recent opinion in *Wachovia Bank v. Schmidt*, 546 U.S. 303, supersedes *American Surety*.  ER 19-20.  The Supreme Court in *Schmidt* held that a national bank is not a citizen of every state in which it has a branch, and that a national

---

[5] NDeX West is a limited liability company organized in Delaware, with no owners or members who are California citizens.  NDeX West is a citizen of Delaware and Texas for purposes of federal diversity jurisdiction.  *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (LLCs have the citizenship of their members); ER4; Notice of Removal (Dkt. No. 1), at 6-7; ER 280-81 (Declaration of Renee Jackson Re: Citizenship of Defendant NDeX West, LLC).

bank is "a citizen of the State in which its main office, as set forth in its articles of association, is located." *Schmidt*, 546 U.S. at 307.

Relying on pre-*Schmidt* cases from other circuits that also faced the question whether a national bank is a citizen of every state in which it has a branch, the district court determined that, even in the absence of *American Surety*, it would hold that a national bank is a citizen of both the state where its principal place of business is located and the state where its main office is located. ER 20-23. The district court concluded that "jurisdictional parity" with the citizenship of state-chartered corporations requires such a holding. *Id.*

Having concluded that there was no diversity jurisdiction, the district court declined to exercise supplemental jurisdiction over the state law claims and remanded the case to California state court. ER 23-24 (citing 28 U.S.C. § 1367(c)(3)).[6]

## SUMMARY OF THE ARGUMENT

a. Congress has provided that, for purposes of federal diversity jurisdiction, "[a]ll national banking associations shall . . . be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. In *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006), the Supreme Court interpreted this language and

---

[6] The district court's order cites 28 U.S.C. § 1367(d)(3), but the quoted language appears in 28 U.S.C. § 1367(c)(3). There is no subsection (d)(3) in Section 1367.

"h[e]ld that a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Id.* at 307. The Court's opinion in *Schmidt* strongly indicates that a national bank is "located" in a single state for diversity purposes – the state in which its main office is located. The Court expressly noted that § 1348, unlike 28 U.S.C. § 1332 (the diversity jurisdiction statute that applies to state-chartered corporations), "does not refer to 'principal place of business.'" *Id.* at 317 n.9. In addition, the Court's holding in *Schmidt* contains no suggestion that a national bank might also be a citizen of the state of its principal place of business. The Court also explained that Congress enacted § 1348 in 1948, at a time when state-chartered corporations were deemed to be citizens of a single state – their state of incorporation. It was only in 1958 that Congress amended § 1332 to provide that state-chartered corporations are also deemed to be citizens of their principal place of business. Congress gave no indication that the 1958 amendment applied to national banks, which are governed by a different statute.

b.  Following *Schmidt*, federal courts of appeals have uniformly held that a national bank is a citizen of the state in which its main office is located, and not its principal place of business. *See, e.g.*, *Wells Fargo Bank,  N.A. v. WMR e-PIN, LLC*, 653 F.3d 702 (8th Cir. 2011); *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346 (7th Cir. 2006).

c.  An analysis of the evolution of the statute governing federal jurisdiction in cases involving national banks confirms that a national bank's citizenship, for diversity purposes, is determined by the location of its main office.  From 1863 to 1882, national banks were permitted to sue and be sued in federal court without regard to diversity.  In 1882, Congress provided that jurisdiction in cases brought by or against national banks "shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States."  Act of July 12, 1882, § 4, 22 Stat. 163.  In 1887, Congress dropped the reference to state-chartered banks, providing instead that national banks shall "be deemed citizens of the States in which they are respectively located," and that federal courts "shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State."  Act of Mar. 3, 1887, § 4, 24 Stat. 554-55.  In 1911, Congress deleted the provision linking jurisdiction over national banks to jurisdiction over individual citizens.  Act of Mar. 3, 1911, § 24 (Sixteenth), 36 Stat. 1091-93.  The current version of the statute, enacted in 1948, contains no reference to the citizenship of state banks or state-chartered corporations.  The evolution of these various statutory provisions shows that Congress knew how to provide for "jurisdictional parity" between national banks and state banks, but repealed the statutory language providing for such parity more than a century ago.

Even if a "jurisdictional parity" principle could be read into § 1348, the relevant *time* for assessing parity would be 1948, when § 1348 was enacted. *See MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 228 (1994) (time of enactment is "most relevant time for determining a statutory term's meaning"). In 1948, state-chartered corporations were citizens of only one state – their state of incorporation. Treating a national bank as a citizen of the state in which its main office is located thus achieved jurisdictional parity between national banks and state banks when § 1348 was enacted.

It was not until 1958 that Congress amended § 1332 to provide that state-chartered corporations are deemed to be citizens of their principal place of business as well as their state of incorporation. Section 1332 does not apply to national banks and makes no reference to § 1348. Thus, in 1958 "Congress reconfigured the jurisdictional landscape of . . . state corporations, but left that of national banks undisturbed." *WMR e-PIN*, 653 F.3d at 708. Any policy arguments for a different result are properly addressed to Congress.

d. The district court concluded that it was compelled to reach a contrary result by this Court's decision in *American Surety Co. v. Bank of California*, 133 F.2d 160. That is incorrect, for two reasons. *First*, *American Surety* did not present the question at issue in this case because it involved a national bank that had its main office and principal place of business in the same state. Thus,

*American Surety* decided (correctly) that national banks are not citizens of every state in which they operate a branch. The Court's opinion states that "[t]he citizenship of a corporation is fixed by its principal place of business," *id.* at 162, but the Supreme Court cases this Court cited for that proposition hold that a corporation is a citizen only of its state of incorporation. It is unlikely that this Court intended to depart from governing Supreme Court precedent of which it was well aware.

*Second*, if *American Surety* is read as having decided the question presented by this case, it has been superseded by the Supreme Court's decision in *Schmidt*. A holding that a national bank "is a citizen only of the state in which its principal place of business is located," *id.*, conflicts with the Supreme Court's holding that a national bank is a citizen of the state in which its main office is located.

The other pre-*Schmidt* cases on which the district court relied, like *American Surety*, did not present the question at issue in this case. Moreover, the pre-*Schmidt* cases failed to recognize that Congress repealed the statutory language providing for jurisdictional parity between federal banks and state banks long before it adopted § 1348 or amended § 1332 to provide for principal-place-of-business citizenship.

For these reasons, the district court erred in holding that Wells Fargo is a citizen of its principal place of business as well as the state in which its main office is located.

## ARGUMENT

### A NATIONAL BANK'S CITIZENSHIP FOR DIVERSITY PURPOSES IS DETERMINED SOLELY BY THE LOCATION OF ITS MAIN OFFICE.

Federal district courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  In this case, there is no dispute that: (1) the amount in controversy exceeds $75,000; (2) the Rouses are citizens of California, *see* ER 4; Notice of Removal (Dkt. No. 1), at 3, 7-9; ER 59; (3) NDeX West is not a citizen of California, and (4) Wells Fargo is a national bank with its main office in South Dakota and its principal place of business in California, ER 272-78.  The issue presented by this appeal is whether, for diversity jurisdiction purposes, Wells Fargo is a citizen of California (the location of its principal place of business) as well as South Dakota (the location of its main office).

As a national bank, Wells Fargo's citizenship is governed by 28 U.S.C. § 1348, which states, in relevant part, "All national banking associations shall . . . be deemed citizens of the States in which they are respectively located."  The

district court held that the term "located" in § 1348 means both the state in which a national bank's main office is located *and* the state in which it has its principal place of business. As a result, the district court concluded that Wells Fargo is a citizen of California and that diversity of citizenship does not exist between Wells Fargo and the Rouses. For the reasons discussed below, this holding is incorrect. This Court reviews the district court's denial of subject matter jurisdiction *de novo*. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir. 1989) ("The existence of subject matter jurisdiction presents a question of law reviewed *de novo* by the court of appeals.").

> **A.**    **The Supreme Court's Decision In *Schmidt* Holds That A National Bank Is A Citizen Of The State In Which Its Main Office Is Located.**

In *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, the Supreme Court was called upon to interpret § 1348's provision that, for diversity jurisdiction purposes, national banks "shall . . . be deemed citizens of the States in which they are respectively located." The question presented in *Schmidt* was whether a national bank's "citizenship is determined by the place designated in the bank's articles of association as the location of its main office," or whether, in addition, "a national bank is a citizen of every State in which it maintains a branch." 546 U.S. at 306-07. "Recognizing that 'located' is not a word of 'enduring rigidity,'" the Supreme Court declared: "[W]e hold that a national bank, for § 1348 purposes, is a citizen

16

of the State in which its main office, as set forth in its articles of association, is located." *Id.* at 307 (quoting *Citizens & S. Nat'l Bank v. Bougas*, 434 U.S. 35, 44 (1977)). The Court explained that if it had held that a national bank is "a citizen of every State in which it has established a branch, the access of a federally chartered bank to a federal forum would be drastically curtailed in comparison to the access afforded state banks and other state-incorporated entities." *Id.*

In a footnote, the Court addressed the argument that it should hold that a national bank is a citizen of the State of its principal place of business, in order to achieve "complete parity" with state-incorporated entities. The Court explained:

> To achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business. Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The counterpart provision for national banking associations, § 1348, however, does not refer to "principal place of business"; it simply deems such associations "citizens of the States in which they are respectively located."

*Id.* at 317 n.9 (internal citation omitted). The Court noted that "[t]he absence of a 'principal place of business' reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide." *Id.*

17

The Supreme Court's opinion in *Schmidt* points to the proper answer to the question presented in this case. Presented with an opportunity to embrace a rule of "complete parity," the Supreme Court declined to do so. Instead, it called attention to the contrast between the language of § 1332(c)(1), which refers to "principal place of business," and the language of § 1348, which contains no such reference. In so doing, the Supreme Court provided a strong indication that a national bank is a citizen only of the state in which its main office is located. *See Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*, 470 F. Supp. 2d 312, 317 (S.D.N.Y. 2006) (*Schmidt* reflects considerable "skepticism" about whether "'located' in § 1348 included a national bank's 'principal place of business,' in view of the absence of such term in the statute"). Moreover, the Court's holding in *Schmidt* is that "a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located." 546 U.S. at 307. That holding includes no qualification that a national bank might also be a citizen of the state of its principal place of business.[7]

In addition, the Court's opinion in *Schmidt* explains a key chronological point supporting the conclusion that a national bank's citizenship is determined

---

[7] The language of the Supreme Court's holding in *Schmidt* contrasts sharply with the language of two pre-*Schmidt* decisions discussed in the Supreme Court's opinion in *Schmidt*, which concluded that a national bank was a citizen of the state in which its main office is located *and* its principal place of business. *See* pp. 43-47 *infra*.

18

solely by the location of its main office.  As the Court explained, Congress enacted

§ 1348 in its current form in 1948, *id.* at 312, at a time when the federal diversity

jurisdiction statute provided that a state-chartered corporation was deemed to be a

citizen solely of the state in which it had been incorporated.  Not until 1958 – a

decade later – did Congress amend 28 U.S.C. § 1332 to provide that a state-

chartered corporation is also deemed to be a citizen "of the State where it has its

principal place of business."  28 U.S.C. § 1332(c)(i); *WMR e-PIN*, 653 F.3d at 708-

09.  No corresponding change was made to § 1348 in 1958.  *Id.*

During the oral argument in *Schmidt*, the Office of the Comptroller of the

Currency (the federal agency that regulates national banks), speaking through its

counsel, noted this sequence of events and expressed the position of the OCC and

the United States that a national bank is a citizen *only* of the state in which its main

office is located:

> MR. SRINIVASAN: For purposes of determining its
> State citizenship under 28 U.S.C. 1348, a national
> banking association is located in the State in which its
> main office is found, not every State in which it may
> maintain a branch office or other form of physical
> presence.
>
> JUSTICE GINSBURG: What about its principal place of
> business if it's different from its main office?
>
> MR. SRINIVASAN: The –
>
> JUSTICE GINSBURG: Principal place of business.

MR. SRINIVASAN: We – *we don't think that a national banking association is a citizen of a State in which its principal place of business is found, insofar as that might be different from the State in which its main office is located.*

JUSTICE GINSBURG: So the main office is it, like 1332 before the '58 amendment.

MR. SRINIVASAN: *That's right, Justice Ginsburg, and in part, that's because of the historical chronology. The word located was first used in 1887 and the current version of section 1348 was enacted in 1948, which was 10 years before the concept of principal place of business had any jurisdictional salience. That was the first time that Congress – this was in 1958 – that Congress enacted a specific provision dealing with corporate citizenship, and that's the first time that we see the concept of principal place of business having relevance in the jurisdictional context.*

Transcript of Oral Argument at *20-*21, *Schmidt*, 546 U.S. 303 (No. 04-1186), 2005 WL 3358081 (emphasis added). As another court of appeals has recognized, these considered statements of the views of the OCC and the United States are entitled to respect. *See WMR e-PIN*, 653 F.3d at 709 n.5; *Excelsior Funds*, 470 F. Supp. 2d at 320 n.9.[8]

---

[8] Prior to *Schmidt*, the OCC had addressed the question whether a national bank is a citizen everywhere it has a branch office, and in answering that question in the negative had indicated that a national bank is a citizen of the state in which its main office is located *and* the state in which it has its principal place of business. *See* Office of the Comptroller of the Currency, Interpretive Letter No. 952, at *4. As the Eighth Circuit has explained, this earlier statement was superseded by the OCC's statement before the Supreme Court in *Schmidt*, which is "both more recent and more defensible." *WMR e-PIN*, 653 F.3d at 709 n.5; *see also Excelsior Funds*, (continued…)

**B.     Following *Schmidt*, The Courts of Appeals Have Uniformly Held That A National Bank's Citizenship Is Determined By The Location Of Its Main Office, Not Its Principal Place Of Business.**

In the six years since the Supreme Court decided *Schmidt*, federal courts of appeals uniformly have held that a national bank is a citizen of the state in which its main office is located, and is not also a citizen of its principal place of business.

In *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, the Eighth Circuit held that Wells Fargo Bank is a citizen of South Dakota, and not a citizen of California, for diversity jurisdiction purposes. In *WMR e-PIN*, one of the parties opposing the bank was a citizen of California; it contended that diversity jurisdiction was lacking because Wells Fargo's principal place of business is in California. The Eighth Circuit rejected that argument.

After reviewing the evolution of § 1348, the Eighth Circuit explained that when Congress adopted the current version of that provision in 1948, it "had not yet created principal-place-of-business citizenship" for state-chartered corporations. *Id.* at 708. In 1958, when Congress added the concept of principal-place-of-business citizenship to § 1332(c)(1) in 1958, "it made no reference to jurisdictional parity, nor to national banks or § 1348." *Id.* Moreover, "nothing in § 1348 indicates that it would incorporate by reference any subsequent change in

---

470 F. Supp. 2d at 320 n.9 (OCC letter "is inconsistent with the position of the Government as explained at oral argument," and therefore "not entitled to deference, particularly because it is not supported by the text of the statute").

the statutes governing jurisdiction over state banks and corporations." *Id.* The court of appeals therefore concluded that by adopting the 1958 amendments to § 1332, "Congress reconfigured the jurisdictional landscape of state banks and state corporations, but left that of national banks undisturbed." *Id.* The court explained, "Had Congress wished to retain jurisdictional parity in 1958, it could have unequivocally done so. It did not, and consequently the concept no longer applies." *Id.* at 709.

Other courts of appeals have reached the same conclusion, albeit in cases in which jurisdiction did not turn on the national bank's principal place of business. In *Hicklin Engineering, L.C. v. Bartell*, 439 F. 3d 346 (7th Cir. 2006), the Seventh Circuit concluded that *Schmidt* "held that national banks are citizens *only* of the states in which their main offices are located." *Id.* at 348 (emphasis added).[9] In *McKenna v. Wells Fargo Bank, N.A.*, No. 11-1650, 2012 U.S. App. LEXIS 17694 (1st Cir. Aug. 16, 2012), the First Circuit held: "Wells Fargo, a national bank, is a citizen of the state where it is 'located,' 28 U.S.C. § 1348; this is the State

---

[9] The district court in this case thought it unlikely that the Seventh Circuit's decision in *Hicklin* was intended to depart from its pre-*Schmidt* decision in *Firstar Bank, N.A. v. Faul*, 253 F.3d 982 (7th Cir. 2001), which included a statement (unnecessary to the Court's holding) that national bank citizenship, for diversity purposes, includes its principal place of business as well as the location of its main office, specifically the state listed in its organization certificate, *id.* at 994. *Firstar* is discussed *infra* at pp. 43-47. For present purposes, it is noteworthy that the Seventh Circuit's post-*Schmidt* opinion expressly states that national banks are citizens *only* of the state in which their main office is located.

designated in its articles of association as its main office, and Wells Fargo is a citizen of South Dakota for diversity purposes." *Id.* at \*7 (internal quotations and citations omitted). Similarly, in *Hargrow v. Wells Fargo Bank N.A.*, No. 11-1806, 2012 U.S. App. LEXIS 13638 (6th Cir. July 3, 2012), the Sixth Circuit held that "Wells Fargo is a citizen of South Dakota for diversity purposes," *id.* at \*4 (citing *Schmidt*). Thus, post-*Schmidt* decisions from multiple circuits all support the conclusion that national bank citizenship, for diversity purposes, is determined solely by the location of the national bank's main office.[10]

---

[10] Many district courts, including district courts in this Circuit, have reached the same conclusion. *See, e.g., Excelsior Funds, Inc. v. JP Morgan Chase, N.A.*, 470 F. Supp. 2d 312, 318 (S.D.N.Y. 2006); *Kho v. Wells Fargo & Co.*, No. SACV 12-0847 DOC (AGRx), 2012 U.S. Dist. LEXIS 110957 (C.D. Cal. Aug. 6, 2012); *Kim v. Wells Fargo Bank, N.A.*, No. 5:12-cv-02066, 2012 U.S. Dist. LEXIS 108596 (N.D. Cal. Aug. 2, 2012); *Granada v. Wachovia Fin. Servs. Inc.*, No. 2:11-cv-10772-JHN-JCGx, 2012 U.S. Dist. LEXIS 54149 (C.D. Cal. Apr. 18, 2012); *Forsythe v. Wells Fargo Bank, N.A.*, No. SACV 12-00139-CJC(JPRx), 2012 U.S. Dist. LEXIS 44031 (C.D. Cal. Mar. 28, 2012); *Sami v. Wells Fargo Bank, et al.*, No. C 12-00108 DMR, 2012 U.S. Dist. LEXIS 38466 (N.D. Cal. Mar. 21, 2012); *Flores v. Wells Fargo Bank, N.A.*, No. 3:11-cv-6619 JSC, 2012 U.S. Dist. LEXIS 32648 (N.D. Cal. Mar. 12, 2012); *Mireles v. Wells Fargo Bank, N.A.*, No. CV 11-07720 MMM (FMOx), 2012 U.S. Dist. LEXIS 3871 (C.D. Cal. Jan. 11, 2012); *Moreno v. Wells Fargo*, No. C -11-05189 EDL, 2011 U.S. Dist. LEXIS 146195 (N.D. Cal. Dec. 20, 2011); *Marzette v. Provident Savings Bank, F.S.B.*, No. 2:11-CV-2089 JAM-CKD, 2011 U.S. Dist. LEXIS 130657 (E.D. Cal. Nov. 10, 2011); *OneWest Bank, FSB v. Joam, LLC*, No. 10-CV-1063 (JG) (SMG), 2011 U.S. Dist. LEXIS 150999 (E.D.N.Y. July 26, 2011); *Albarran v. Wells Fargo Bank*, No. SACV 11-00548-JVS (MLGx), 2011 U.S. Dist. LEXIS 59635 (C.D. Cal. May 26, 2011); *Kasramehr v. Wells Fargo Bank N.A.*, No. CV 11-0551 GAF (OPx), 2011 U.S. Dist. LEXIS 52930 (C.D. Cal. May 17, 2011); *Tse v. Wells Fargo Bank, N.A.*, No. C10-4441 TEH, 2011 U.S. Dist. LEXIS 6796 (N.D. Cal. (continued…)

C.  **An Analysis Of The Evolution Of Sections 1348 and 1331 Leads To The Conclusion That A National Bank's Citizenship, For Diversity Purposes, Is Determined By The Location Of Its Main Office.**

  1.  **Between 1863 and 1948, Congress Repeatedly Modified The Jurisdictional Provisions Applicable To National Banks.**

As the Supreme Court explained in *Schmidt*, Congress repeatedly modified the jurisdictional provisions applicable to national banks over a span of more than 80 years.  When Congress established national banks in 1863, it provided that "any 'suits, actions, and proceedings by and against [them could] be had' in federal court."  *Schmidt*, 546 U.S. at 309 (alteration in original) (citing Act of Feb. 25, 1863, § 59, 12 Stat. 681).  Under the 1863 Act, national banks could "sue and be sued in the federal district and circuit courts solely because they were national banks, without regard to diversity, amount in controversy or the existence of a

_____

Jan. 19, 2011); *Atienza v. Wells Fargo Bank, N.A.*, No. C 10-03457 RS, 2011 U.S. Dist. LEXIS 1738 (N.D. Cal. Jan. 4, 2011); *California ex rel. Bates v. Mortg. Elec. Registration Sys., Inc.*, No. 2:10-cv-01429-GEB-CMK, 2010 U.S. Dist. LEXIS 81650 (E.D. Cal. July 21, 2010); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119 (N.D. Cal. 2010); *Cochran v. Wachovia Bank, N.A.*, No. CV 10-018 CAS (AGRx), 2010 U.S. Dist. LEXIS 38379 (C.D. Cal. Mar. 9, 2010).  Some district courts in this Circuit have reached a contrary result, however, creating a need for this Court's intervention.  *See, e.g.*, *Taheny v. Wells Fargo Bank, N.A.*, No. CIV. S-10-2123 LKK/EFB, 2012 U.S. Dist. LEXIS 47195 (E.D. Cal. Apr. 3, 2012); *Uriarte v. Wells Fargo Bank, N.A.*, No. 11-cv-2082 - IEG (WVG), 2011 U.S. Dist. LEXIS 127497 (S.D. Cal. Nov. 3, 2011); *Guinto v. Wells Fargo Bank*, No. CIV. S-11-372 LKK/GGH, 2011 U.S. Dist. LEXIS 114986 (E.D. Cal. Oct. 5, 2011); *Saberi v. Wells Fargo Home Mortg.*, No. 10CV1985 DMS (BGS), 2011 U.S. Dist. LEXIS 5286 (S.D. Cal. Jan. 20, 2011); *Mount v. Wells Fargo Bank, N.A.*, No. CV 08-6298, 2008 U.S. Dist. LEXIS 98193 (C.D. Cal. Nov. 24, 2008).

federal question in the usual sense." *Mercantile Nat'l Bank at Dallas v. Langdeau*, 371 U.S. 555, 566 (1963). State banks, in contrast, "like other state-incorporated entities, could initiate actions in federal court only on the basis of diversity of citizenship or the existence of a federal question." *Schmidt*, 546 U.S. at 310 (citing *Petri v. Commercial Nat'l Bank of Chicago*, 142 U.S. 644, 648-649 (1892)).

In 1882, "Congress ended national banks' automatic qualification for federal jurisdiction." *Id.* The 1882 Act provided:

> [T]he jurisdiction for suits hereafter brought by or against any association established under any law providing for national-banking associations . . . *shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States* which do or might do banking business where such national-banking associations may be doing business when such suits may be begun[.]

*Id.* (alterations in original) (emphasis added) (quoting Act of July 12, 1882, § 4, 22 Stat. 163). The 1882 Act eliminated the ability of national banks to "invoke federal-court jurisdiction solely 'on the ground of their Federal origin.'" *Id.* (quoting *Petri*, 142 U.S. at 649). In place of automatic federal jurisdiction, the 1882 Act "put national banks on the same footing as the banks of the state where they were located for all the purposes of the jurisdiction of" federal courts. *Leather Mfrs.' Bank v. Cooper*, 120 U.S. 778, 780 (1887); *see also id.* at 781 ("[T]he act of 1882 provided in clear and unmistakable terms that the courts of the United States should not have jurisdiction of [suits against national banks]

thereafter brought . . . unless they would have jurisdiction under like circumstances of suits by or against a state bank doing business in the same state with the national bank." (emphasis omitted)).

In 1887, Congress "replaced the 1882 provision on jurisdiction over national banks and first used the 'located' language" that appears in the current version of § 1348. *Schmidt*, 546 U.S. at 310. The 1887 Act stated,

> [A]ll national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal or mixed, and all suits in equity, be deemed *citizens of the States in which they are respectively located*; and in such cases the circuit and district courts shall *not have jurisdiction other than such as they would have in cases between individual citizens of the same State*.

Act of Mar. 3, 1887, § 4, 24 Stat. 554-55 (emphases added). The 1887 Act removed the express reference to state banks that appeared in the 1882 Act, and instead linked jurisdiction over national banks to federal court jurisdiction over "individual citizens of the same State." *Id.*, § 4, 24 Stat. 555. Of course, individual citizens are citizens of a single state, not multiple States. *Schmidt*, 546 U.S. at 318 ("An individual who resides in more than one State is regarded, for purposes of federal subject-matter (diversity) jurisdiction, as a citizen of but one State."); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (an individual is a citizen of the state in which he or she is "domiciled"); *Williamson v. Osenton*, 232 U.S. 619, 625 (1914) ("[D]omicil is the technically preeminent

26

headquarters" of an individual and "[i]n its nature it is one"). Thus, the language of the 1887 Act strongly indicated that national banks were citizens of a single state, not multiple states.

In 1888, Congress added "a separate paragraph" to the statute stating: "'The provisions of this section shall not be held to affect the jurisdiction of the courts of the United States in cases commenced by the United States or by direction of any officer thereof, or cases for winding up the affairs of any such bank.'" *Schmidt*, 546 U.S. at 311 n.5 (quoting Act of Aug. 13, 1888, § 4, 25 Stat. 436)).

In 1911, Congress "combined two formerly discrete provisions on proceedings involving national banks, . . . retain[ing] without alteration the clause deeming national banks to be 'citizens of the States in which they are respectively located.'" *Id.* at 311 (quoting Act of Mar. 3, 1911, § 24 (Sixteenth), 36 Stat. 1091-93). The 1911 Act provided that

> [t]he district courts shall have original jurisdiction . . . [o]f all cases commenced by the United States, or by direction of any officer thereof, against any national banking association, and cases for winding up the affairs of any such bank; and of all suits brought by any banking association established in the district for which the court is held, under the provisions of title 'National Banks,' Revised Statutes, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by said title. And all national banking associations established under the laws of the United States shall, for the purposes of all other actions by or against them, real, personal, or mixed, and all suits in

27

> equity, *be deemed citizens of the States in which they are respectively located.*

Act of Mar. 3, 1911, § 24 (Sixteenth), 36 Stat. 1091-93 (emphasis added).

The 1911 Act deleted the provision that federal courts shall not have jurisdiction "other than such as they would have in cases between individual citizens of the same State." Act of Mar. 3, 1887, § 4, 24 Stat. 555. Congress's decision to drop that provision had no immediate practical consequences in 1911, because state corporations, including state-incorporated banks, were citizens of only one state – their state of incorporation. The fact remains, however that Congress – having already repealed the statutory requirement that jurisdiction over national banks should be linked to jurisdiction over state *banks* in 1887 – eliminated *any* textual linkage between jurisdiction over national banks and jurisdiction over citizens of a State in 1911.[11]

---

[11] A separate provision of the 1911 Act stated, "The provisions of this Act, *so far as they are substantially the same as existing statutes*, shall be construed as continuations thereof, and not as new enactments, and there shall be no implication of a change of intent by reason of a change of words in such statute, unless such change of intent shall be clearly manifest." Act of Mar. 3, 1911, § 294, 36 Stat. 1167 (emphasis added). The 1911 Act's provision on national bank citizenship is not substantially the same as the prior statutes governing national banks because it omits the language that had tied national bank citizenship to that of individuals citizens of a state. Moreover, as discussed further below, *infra* p. 35, in 1887 and 1911 (and for decades thereafter) both state banks and individuals had a single citizenship – the state of incorporation for state banks and state of residence for individuals. Principal place of business citizenship for state-chartered corporations did not exist until 1958. *See infra* p. 32.

The final change to the national bank jurisdiction statute occurred in 1948, when Congress adopted the current provision governing jurisdiction over national banks, 28 U.S.C. § 1348, in the course of revising the Judicial Code, Act of June 25, 1948, 62 Stat. 933. The provision now reads, in full:

> The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.
>
> *All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.*

28 U.S.C. § 1348 (emphasis added).

## 2. The Language Of Section 1348 Does Not Link National Bank Citizenship To The Citizenship Of State Banks Or Corporations.

The district court held that Section 1348 adopts a principle of complete "jurisdictional parity," which "requires treating national banks as citizens of their principal places of business," as well as citizens of their "main office" state. ER 20 (capitalization omitted). But as the Supreme Court emphasized in *Schmidt*, the text of Section 1348 does not refer to a national bank's principal place of business or adopt a rule of "jurisdictional parity." *Schmidt*, 546 U.S. at 317 n.9. Indeed,

Section 1348 does not refer to state banks (or state-chartered corporations) at all, let alone provide any textual indication that the citizenship of national banks is linked to that of state banks or corporations.

Congress certainly knew how to link the citizenship of national banks to that of state banks. The 1882 Act specified that federal court jurisdiction over national banks "*shall be the same as, and not other than,* the jurisdiction for suits by or against banks not organized under any law of the United States." Act of July 12, 1882, § 4, 22 Stat. 163. The 1887 Act restricted district court jurisdiction over national banks to not "other than such as they would have in cases between individual citizens of the same State." Act of Mar. 3, 1887, § 4, 24 Stat. 554-55. In 1911, Congress eliminated any language linking jurisdiction over national banks to jurisdiction over state-chartered corporations, Act of Mar. 3, 1911, § 24 (Sixteenth), 36 Stat. 1092-93, and it included no such language in the current version, enacted in 1948. As a result, there is no textual basis for linking national bank citizenship to that of state banks.

As one court has explained, "If Congress intended to achieve jurisdictional parity between national and state banks for all times in § 1348, and thus to include principal place of business as a location for a national bank when it became a basis for citizenship for a state bank, Congress could have provided for that in the statutory language," as it had in "several of § 1348's statutory predecessors."

*Excelsior Funds, Inc.*, 470 F. Supp. 2d at 319.  In view of the changes Congress made to the statutory text "well before the current version of § 1348 was adopted in 1948, the term 'located' cannot be read as incorporating the definition of citizenship for state banks into the statute by reference."  *Id.* at 320.

> ### 3.    Even If Section 1348 Had Retained A Principle Of "Jurisdictional Parity" With State Banks, The Relevant Time For Determining Parity Would Be 1948, When Both National Banks And State Banks Were Citizens Of A Single State.

Even if Section 1348 could be interpreted as adopting a principle of jurisdictional parity between national banks and state banks (despite the lack of any textual warrant for doing so), the relevant time for assessing such jurisdictional parity would be 1948, when Congress adopted § 1348.  *See MCI Telecomm. Corp.*, 512 U.S. at 228 (explaining that the time of a statute's enactment is "the most relevant time for determining a statutory term's meaning"); *Perrin v. United States*, 444 U.S. 37, 42-45 (1979).  Congressional purpose is also determined as of the time of a statute's enactment.  *See Ngiraingas v. Sanchez*, 495 U.S. 182, 187 (1990).  In 1948, as noted above, a corporation's principal place of business had not yet been made a basis for corporate citizenship, and thus Congress could not have intended the term "located" in § 1348 to include a national bank's "principal place of business."

Beginning in 1844, the Supreme Court "held that a corporation was to be deemed an artificial person of the State by which it had been created, and its citizenship for jurisdictional purposes determined accordingly." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1188 (2010) (citing *Louisville, C. & C. R.R. Co. v. Letson*, 43 U.S. 497, 2 How. 497 (1844)); *id.* ("[F]or diversity purposes, the federal courts considered a corporation to be a citizen of the State of its incorporation."). The Court reaffirmed this rule in 1928, making "clear that the 'state of incorporation' rule was virtually absolute." *Id.* (citing *Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co.*, 276 U.S. 518, 522-25 (1928)). Thus, in 1948, it was well-established that a state-chartered corporation was a citizen of only one state – its state of incorporation.

Only in 1958 – a decade after Congress enacted § 1348 – did Congress amend § 1332 to create an additional basis for corporate citizenship. *Id.* at 1190. The 1958 legislation provided that "[a] corporation was to be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Id.* (internal quotation marks omitted). This jurisdictional test is now codified in 28 U.S.C. § 1332(c)(1). *Id.* ("[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business. . . ."). Thus, when Congress enacted the national bank jurisdiction statute in 1948, it could not have

32

intended § 1348 to include principal place of business as a basis for citizenship for national banks because Congress "had not yet created principal-place-of-business citizenship" for corporations (or any other entity). *WMR e-PIN*, 653 F.3d at 708.

In 1948, application of a "jurisdictional parity" principle would have led to the result that both national banks and state-chartered corporations were to be regarded as citizens of a single state. Because "a state bank was a citizen of only one state, the state in which it was incorporated," jurisdictional parity would have required "allowing a national bank to be sued in a single state in which it was located." *Excelsior Funds, Inc.*, 470 F. Supp. 2d at 319.

In sum, when § 1348 was adopted in 1948, state banks and state-chartered corporations were citizens of only one state – the state in which they were incorporated. That remained true until the adoption of § 1332(c)(1) in 1958. Thus, at the relevant time for determining the meaning of "located," parity would have required that a national bank be a citizen of – that is, be "located" in – only one state: the state in which its main office is located, as listed in its articles of association. *See Excelsior Funds, Inc.*, 470 F. Supp. 2d at 319. There is no indication that § 1348 was meant to incorporate later changes in corporate jurisdiction. *See WMR e-PIN*, 653 F.3d at 708 ("[N]othing in § 1348 indicates that it would incorporate by reference any subsequent change in the statutes governing jurisdiction over state banks and corporations."). Therefore, even if a

"jurisdictional parity" principle could be applied to this case, proper application of that principle would lead to the conclusion that national banks are "located" for citizenship purposes only in the state in which their main office is located.

### 4.     Section 1332(c)(1) Does Not Link National Bank Citizenship To Corporate Citizenship.

When Congress altered the longstanding basis for jurisdiction over corporations in 1958, it gave no indication that it intended to modify the existing single-state citizenship of national banks.   Section 1332(c)(1) states that a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  As the Supreme Court explained in *Schmidt*, "State banks, usually chartered as corporate bodies by a particular State, ordinarily fit comfortably within this prescription.  Federally chartered national banks do not, for they are not incorporated by 'any State.'"  *Schmidt*, 546 U.S. at 306.  Because § 1332(c)(1), by its terms, does not encompass national banks, Congress "discretely provided" in § 1348 that national banks are "'citizens of the States in which they are respectively located.'"  *Id.* (quoting 28 U.S.C. § 1348).

In adopting § 1332(c)(1), Congress "made no reference to 'jurisdictional parity,' national banks or § 1348."  *WMR e-PIN*, 653 F.3d at 708.  As the Eighth Circuit has explained, "These circumstances strongly suggest that, with the passage of § 1332(c)(1), Congress reconfigured the jurisdictional landscape of state banks

and state corporations, but left that of national banks undisturbed." *Id.* The courts should not "import a jurisdictional concept into § 1348 that was unknown at the time of its adoption." *Id.* at 709.

In sum, neither the text nor the legislative history of § 1332(c)(1) suggests that it was intended to affect federal jurisdiction over national banks. *See id.* at 707 ("[N]either [§ 1332(c)(1) nor § 1348] refers to the other or to jurisdictional parity, and neither contains language giving effect to the concept."); *Excelsior Funds, Inc.*, 470 F. Supp. 2d at 319-20 (same).

### 5. Any Policy Arguments For "Complete" Parity Are Properly Addressed To Congress.

In *Schmidt*, the Supreme Court recognized that deeming a national bank to be "located" in *every* state in which it has a branch would "severely constrict[] national banks' access to diversity jurisdiction as compared to the access available to corporations generally," *Schmidt*, 546 U.S. at 317, and explained that "one would sensibly 'locate' a national bank for . . . qualification for diversity jurisdiction [] in the State designated in its articles of association as its main office," *id.* at 318.

The issue presented in this case will have a much smaller impact on the availability of federal diversity jurisdiction. As the Supreme Court noted in *Schmidt*, in almost every case national banks have their main office and principal place of business in the same state. *Id.* at 317 n.9. The question thus affects only a

35

very small number of national banks, and for those few banks the issue is limited to whether they are citizens of one state or two states for diversity purposes. The resulting difference in access to federal courts is far less dramatic than would result from making national banks citizens of *every* state in which they operate a branch. In addition, the issue in this case, unlike the larger issue decided in *Schmidt*, does not involve giving national banks substantially *less* access to federal courts than is available to state banks. Thus, the arguments in favor of the substantial parity achieved in *Schmidt* do not extend to imposing a principle of "complete" parity" that lacks support in the statutory text.

Although it has been six years since the Supreme Court decided *Schmidt*, and numerous courts have held that a national bank is a citizen only of the state in which its main office is located, it continues to be true that "in almost every case, . . . the location of a national bank's main office and of its principal place of business coincide." *Schmidt*, 546 U.S. at 317 n.9. There is thus no basis for concern that national banks will seek to relocate their main offices in order to expand the scope of federal jurisdiction. As explained above, a national bank is forbidden to move its main office to a location more than 30 miles from the city or town limits of its existing main office. *See supra* note 4; 12 U.S.C. § 30(b). The only exception to this rule applies in the case of an interstate bank merger, when a national bank, with the approval of federal banking authorities, may select a main

office or branch of either of the merging banks as a main office. *See* 12 U.S.C. § 1831u(d)(1). Even if national banks were free to move their main offices across state lines, such movements would raise a host of complex issues for the banks quite apart from jurisdiction (including, for example, the maximum interest rates that the national bank can charge under 12 U.S.C. § 85).

As the Eighth Circuit explained, "Had Congress wished to retain jurisdictional parity . . . , it could have unequivocally done so. It did not, and consequently the concept no longer applies. Whether it ought to be revived is a policy question for Congress, not the federal courts." *WMR e-PIN*, 653 F.3d at 709.[12]

### D.   *Pre-Schmidt* Precedents Do Not Support A Different Result.

#### 1.   *American Surety* Does Not Govern The Outcome Of This Case.

---

[12] There is no basis for concluding that Congress, if it considered the matter today, would adopt a principal place of business citizenship test for national banks. To the contrary, in the wake of *Schmidt* Congress enacted legislation providing that federal savings banks (which prior to *Schmidt* lacked a special jurisdictional statute such as § 1348) are citizens *only* of the state in which their main office is located. *See* Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 403, 120 Stat. 1966, 1974 (codified at 12 U.S.C. § 1464(x)) ("In determining whether a Federal court has diversity jurisdiction over a case in which a Federal savings association is a party, the Federal savings association shall be considered to be a citizen only of the State in which such savings association has its home office.") Congress considered, but ultimately rejected, an alternative bill that would have made federal savings associations citizens of their principal places of business, if different from the state of their home office. *See* Financial Services Regulatory Relief Act of 2005, H.R. 3505, 109th Cong., § 213 (2005).

The primary reason the district court gave for its decision is that it was bound by this Court's 1943 decision in *American Surety Co. v. Bank of California*, 133 F.2d 160, to hold that a national bank is a citizen of both the state in which its main office is located and the state of its principal place of business.  ER 14-19.  The district court was incorrect, for two reasons.  *First*, *American Surety* did not present the question in this case because the national bank at issue in that case had its main office and its principal place of business in the same state.  *Second*, if *American Surety* were viewed as having decided the question presented here, it would conflict with the Supreme Court's decision in *Schmidt*.

a.  The Court in *American Surety* considered the 1911 predecessor to § 1348.  The Court faced the same question that was later brought before the Supreme Court in *Schmidt* under § 1348:  whether a national bank is "located" everywhere it had a branch.  The Court considered whether the Bank of California was a citizen of Oregon based solely on the fact that the bank had a branch in Oregon.  *Am. Surety Co.*, 133 F.2d at 162-63.  This Court held that it was not, thus correctly anticipating the Supreme Court's holding in *Schmidt*.  *Id.* at 162.  There was no contention in *American Surety* that the Bank of California's main office or principal place of business was in Oregon.  *See id.* at 161 (bank's "principal place of business [was] at San Francisco, California").  The Court in *American Surety* therefore had no need to decide the question posed by this case: whether a national

38

bank is a citizen of only the state in which its main office is located or of *both* the state where its main office is located *and* the state in which it has its principal place of business where the two are different.  The district court acknowledged *American Surety*'s "failure to consider the case where a corporation's principal place of business was *not* in its state of incorporation," ER 15, but this omission was not really a "failure" at all, because the issue was not before the Court.  Thus, *American Surety* can be understood as having decided – correctly – that national banks are not citizens of every state in which they operate a branch.[13]

The Court did state that "[t]he citizenship of a corporation is fixed by its principal place of business," *Am. Surety Co.*, 133 F.2d at 162.  But it is not reasonable to regard this statement as the holding of the case, because such a holding would have been contrary to established law in 1943 – including the very Supreme Court decisions cited in the Court's opinion in *American Surety*.  Both of the Supreme Court decisions cited in *American Surety* held that a corporation was a citizen only of the state of its incorporation.  *See St. Louis & San Francisco Ry. Co. v. James*, 161 U.S. 545, 562 (1896) ("The presumption that a corporation is composed of citizens of the State which created it accompanies such corporation

---

[13] *Cf. Forsythe v. Wells Fargo Bank, N.A.*, No. SACV 12-00139-CJC, 2012 U.S. Dist. LEXIS 44031, at *5 (C.D. Cal. Mar. 28, 2012) (recognizing that "no controlling authority exists in the Ninth Circuit" on the national bank citizenship question); *Heard-Rodriguez v. World Savings Bank, FSB*, No. SACV 12-00129-CJC, 2012 U.S. Dist. LEXIS 43529, at *4 (C.D. Cal. Mar. 28, 2012) (same).

when it does business in another State, and it may sue or be sued in the Federal courts in such other State as a citizen of the State of its original creation."); *S. Ry. Co. v. Allison*, 190 U.S. 326, 332 (1903) (Court had "finally determined . . . that the citizenship of a corporation was that of the State originally creating it"). Thus, as the district court in this case was forced to acknowledge, at the time of the Court's decision in *American Surety*, it was well-established that "a corporation was a citizen solely of its state of incorporation – not its principal place of business." ER 15.

Given the Court's citation of these Supreme Court decisions, its reference to "principal place of business" may have been a short-hand description of the location of the bank's main office, as designated in the bank's articles of association. In 1943, a bank's place of incorporation and its principal place of business were one and the same in virtually every case, including the case before the Court. It is unlikely that the Court in *American Security* intended to adopt a rule that conflicted with well-settled Supreme Court precedent, and its opinion should not be interpreted as having done so in the absence of a clear indication of such an intent.[14]

---

[14] At the time of the Court's decision in *American Surety*, the concept of "principal place of business" was recognized only as a basis for bankruptcy jurisdiction. The Bankruptcy Act of 1898 included a provision that gave bankruptcy courts jurisdiction to "[a]djudge persons bankrupt who have had their principal place of
(continued…)

b.  If *American Surety* is nevertheless read as having decided the question that is now before this Court, then its holding has been superseded by *Schmidt*.  *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) ("[W]here intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority . . . a three-judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinions of this court as having been effectively overruled.").  This Court's statement in *American Surety* that a national bank "is a citizen *only* of the state in which its principal place of business is located,"  *Am. Surety Co.*, 133 F.2d at 162 (emphasis added), directly conflicts with the Supreme Court's subsequent holding in *Schmidt* that a national bank "is a citizen of the State in which its main office, as set forth in its articles of association, is located," *Schmidt*, 546 U.S. at 307.[15]  *American*

---

business, resided or had their domicile within their respective territorial jurisdictions for the preceding six months."  11 U.S.C. § 11(a)(1) (1940).  When Congress introduced the principal place of business standard into § 1332 in 1958, it noted that the concept "has a precedent in the jurisdictional provisions of the Bankruptcy Act."  S. Rep. No. 85-1830, *reprinted in* 1958 U.S.C.C.A.N. 3099, 3122 (1958), 1958 WL 3857.  As explained above, however, a corporation's principal place of business, as distinguished from its state of incorporation, was not relevant for diversity of citizenship purposes at the time of *American Surety*.

[15]  District courts in this Circuit have recognized that *Schmidt* conflicts with *American Surety* for this reason.  *See Kim v. Wells Fargo Bank, N.A.*, No. 5:12-cv-02066, 2012 U.S. Dist. LEXIS 108596, at \*9-\*10 (Aug. 2, 2012) ("Because *American Surety* left no room for another basis of citizenship, including that promulgated by the Supreme Court, *American Surety* conflicts with *Schmidt* in such a way that harmonization of the two is impossible. . . . *Schmidt*, not *American* (continued…)

*Surety*'s use of the word "only" operates to exclude a national bank's main office location as the basis of its citizenship, a result squarely at odds with the Supreme Court's holding in *Schmidt*.  *Schmidt* excludes the possibility that a national bank is a citizen of *only* the state in which it has its principal place of business, as stated in *American Surety*.  *Schmidt* therefore abrogates this reading of *American Surety*.

In sum, if resolving the branch location-based citizenship question were sufficient to also decide the question presented in this case, then *Schmidt*'s holding that "a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located," *id.*, would necessarily overrule *American Surety*'s holding that a national bank "is a citizen *only* of the state in which its principal place of business is located," *Am. Surety Co.*, 133 F.3d at 162 (emphasis added).[16]  *American Surety* need not and should not

---

*Surety*, is controlling here."); *Flores v. Wells Fargo Bank, N.A.*, No. 3:11-cv-6619, 2012 U.S. Dist. LEXIS 32648, at *6-*8 (N.D. Cal. Mar. 12, 2012).

[16] There are other good reasons to conclude that *American Surety* is not controlling. The Supreme Court's opinion in *Schmidt* does not mention *American Surety* at all, let alone recognize that it adopted a principal place of business test.  This is unlikely to have been an oversight, since the case was cited and discussed in briefs filed at the Supreme Court.  Brief for Petitioner at 26, *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006) (No. 04-1186), 2005 WL 1996311, at *26; Brief for Respondent at 40-41, *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006) (No. 04-1186), 2005 WL 2646357, at *40-*41.    Moreover, in two post-*Schmidt* decisions this Court also did not mention *American Surety*.  *See Lowdermilk v. U.S. Bank, N.A.*, 479 F.3d 994, 997  (9th Cir. 2007) (holding that the defendant national bank "is a citizen of Ohio because its main office is located in that state"); *Peralta v. Countrywide Home Loans, Inc.*, 375 Fed. Appx. 784, 785 (9th Cir. 2010) (continued…)

be read as having decided the issue in this case; but if it had, it would have been "effectively overruled" by *Schmidt*.  *Miller*, 355 F.3d at 900.

> ## 2.     The Other Pre-*Schmidt* Cases Relied On By The District Court Are Distinguishable.

The district court also relied on two pre-*Schmidt* decisions, but both are readily distinguishable.  *See Horton v. Bank One, N.A.*, 387 F.3d 426 (5th Cir. 2004), and *Firstar Bank, N.A. v. Faul*, 253 F.3d 982 (7th Cir. 2001).  *See* ER 11-13, 20-21.  Like *Schmidt* and *American Surety*, both of these cases presented the question whether national banks are citizens of *every* state in which they have a branch.  *See Horton*, 387 F.3d at 428; *Firstar Bank*, 253 F.3d at 985.  Thus, neither case required the court to decide the question presented here: whether a national bank is a citizen only of the state in which its main office is located or also of the state in which it has its principal place of business if the two are different.  To the extent that the Fifth and Seventh Circuit opinions included statements that are relevant to the question presented here, those statements are unpersuasive in the light of *Schmidt* and post-*Schmidt* decisions.

In *Firstar Bank, N.A. v. Faul*, the Seventh Circuit rejected the argument that national banks are citizens of every state in which they have a branch.  *See id.* at

---

(unpublished) (declining to decide "complex jurisdictional issue," not necessary to its decision, whether a national bank is a citizen of its principal place of business, in addition to the state in which its main office is located).

985.  In the course of rejecting that position, the court stated that a national bank is located in and a citizen of "the state of its principal place of business and the state listed in its organization certificate."  *Id.* at 994.  This statement was unnecessary to the court's decision, because Firstar Bank had both its main office and its principal place of business in the same state.  Moreover, the Seventh Circuit's understanding of the parity principle was flawed.  It stated,

> since 1882[,] statutes have provided national banks with the same access to federal jurisdiction as state banks and other corporations.  When Congress enacted 28 U.S.C. § 1348 in 1948, this principle of equal jurisdictional access had been established and followed by the courts for over sixty years.  Thus, Congress passed 28 U.S.C. § 1348 against an interpretive background which assumed that national banks were to have the same access to the federal courts as state banks and corporations.  No language in the statute rebuts this presumption.

*Id.* at 988.

*Firstar* failed to appreciate that jurisdictional parity was based on language in the 1882 and 1887 Acts – language that Congress repealed in 1911, long before it enacted § 1348 or decided to expand the concept of a state corporation's citizenship for purposes of § 1332.[17]  The Seventh Circuit's application of parity to

---

[17] The Seventh Circuit acknowledged in a footnote, that "[i]nterpreting 28 U.S.C. § 1348, the current version of which was promulgated in 1948, by referencing 28 U.S.C. § 1332(c)(1), enacted ten years later in 1958, might strike some as incongruous."  *Firstar*, 253 F.3d at 993 n.5.  But the court dismissed its ahistorical (continued…)

the current statute thus rests on an untenable assumption "that jurisdictional parity is an immutable principle that endures long after the statutes from which it arose have been amended and all references to it have been excised." *WMR e-PIN*, 653 F.3d at 708.[18]

The Fifth Circuit relied on *Firstar* when it considered the branch location citizenship question in *Horton*, 387 F.3d at 429, and it made the same error in analyzing parity as a historical matter, *id.* at 431 ("It is then plain that Congress enacted section 1348 against a backdrop of equal access to the federal courts for national banks, state banks, and corporations. Because section 1348 does not have any language modifying or rejecting the interpretive understanding that came with its predecessors, this court should presume that Congress intended to retain and incorporate the existing interpretive backdrop." (internal citation omitted)).[19]

---

interpretation as part of the "'classic judicial task of reconciling many laws enacted over time.'" *Id.* (quoting *United States v. Fausto*, 484 U.S. 439, 453 (1988)).

[18] In a post-*Schmidt* decision, moreover, the Seventh Circuit expressly recognized that *Schmidt* "held that national banks are citizens *only* of the states in which their main offices are located." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (emphasis added). Although *Hicklin Engineering* did not expressly repudiate *Firstar*, the Seventh Circuit expressly took a different view of the issue in the light of *Schmidt*.

[19] The Fifth Circuit departed from the Seventh Circuit's decision in *Firstar* by reserving the question whether a national bank should be considered a citizen of the state listed in its articles of association or of the state listed in its organizing certificate. *Horton*, 387 F.3d at 431 n.26. The OCC has clarified that the articles of association is controlling because it reflects the bank's current main office (continued…)

45

The district court's reliance on *Firstar* and *Horton* is unjustified for other reasons as well. The district court required what the Supreme Court referred to as "complete parity." *Schmidt*, 546 U.S. at 317 n.9. In other words, the district court required that national banks be treated exactly the same as state banks for purposes of federal court jurisdiction. *Horton* and *Firstar*, in contrast, employed parity in the more general sense that the Supreme Court did in *Schmidt*: declining to render national banks citizens of *every* state in which they have a branch, which would have resulted in dramatic differences between national and state banks for purposes of diversity jurisdiction.

In addition, *Horton* and *Firstar* employed parity to *protect* national banks, that is, to increase their access to federal courts via diversity jurisdiction. Those cases do not stand for the proposition that parity should be applied when doing so would *decrease* national banks' access to federal courts. *Firstar* and *Horton* reflect a clear concern that national banks be in *no worse* position vis-à-vis access to federal courts than state banks or corporations. *See Firstar*, 253 F.3d at 993 ("Whatever reasons Congress has for retaining diversity jurisdiction for corporations support an equal degree of access to diversity jurisdiction for national banks."); *Horton*, 387 F.3d at 431 ("Since a state bank, under 28 U.S.C.

location. The organization certificate reflects the historical location where the bank incorporated. Office of the Comptroller of the Currency, Interpretive Letter No. 952, at *3.

§ 1332(c)(1), may be a citizen of no more than two states – the state where its principal place of business is located and its state of incorporation – maintaining jurisdictional parity between a national and state bank requires that the national bank have *no more than two possible states of citizenship*." (emphasis added)). These pre-*Schmidt* cases ultimately decided nothing more.

### E.    The District Court Erred In Holding That The Parties Are Not Diverse.

Wells Fargo's main office is located in South Dakota, and therefore it is "located" in South Dakota for purposes of § 1348. Because a national bank's citizenship for diversity purposes does not depend on its principal place of business, Wells Fargo is not "located" in California for purposes of § 1348. Accordingly, the district court had diversity jurisdiction over this action, and its decision not to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) was an abuse of discretion.

## CONCLUSION

The judgment of the district court should be reversed, and the case should be remanded for an adjudication on the merits.

Respectfully submitted,

/s/ Robert A. Long, Jr.

Robin C. Campbell
Robert Collings Little
Yaw-Jiun (Gene) Wu
ANGLIN FLEWELLING RASMUSSEN
    CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue
Suite 600
Pasadena, CA  91101-2459
(626) 535-1900

Robert A. Long, Jr.
*Lead Counsel*
Kristen E. Eichensehr
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004–2401
(202) 662–6000

DATE:  September 17, 2012

*Counsel for Defendant-Appellant*
*Wells Fargo Bank, N.A.*

48

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,986 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman and 14 point font.



      Robert A. Long, Jr.

September 17, 2012

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Defendant-Appellant Wells Fargo states that it is aware of one related case pending in this Court.  *Wyrauch v. Wells Fargo Bank, NA*, No. 12-55465, raises the same issue as this case, namely whether a national bank is a citizen only of the state in which its main office is located or also of the state where its principal place of business is located if the two are different.  The *Wyrauch* case currently is stayed pending the outcome of this appeal.

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of September, 2012, I caused copies of the foregoing brief to be sent via Federal Express, postage prepaid, or via the Court's Electronic Case Filing system, to each interested party in this action, as detailed in the attached service list.

By:   s/ Robert A. Long, Jr.
                   Robert A. Long, Jr.

DATE: September 17, 2012

## SERVICE LIST

Robert Rouse
Victoria Rouse
6755 Di Carlo Place
Rancho Cucamonga, California  91739-9155
Telephone:  (909) 560-0672
Fax:  [Not available]
E-Mail:  [Not available]

*Pro Se Plaintiffs-Appellees*
ROBERT ROUSE, and
VICTORIA ROUSE

***Served Via Federal Express***

Debra J. Burdette, Esq.
Law Offices of Debra J. Burdette
3820 Del Amo Boulevard, Suite 334
Torrance, California  90503-2156
Telephone:  (818) 888-2788
Fax:  (818) 714-2444
E-Mail:  dburdettelaw@aol.com

*Attorney for Plaintiffs in State
Court Action*
ROBERT ROUSE, and
VICTORIA ROUSE

***Served Via Federal Express***

Edward A. Treder, Esq.
Masumi Jagdish Patel, Esq.
Barrett Daffin Frappier
   Treder & Weiss LLP
20955 Pathfinder Road, Suite 300
Diamond Bar, California  91765-4029
Telephone:  (626) 915-5714
Fax:  (626) 595-7640
E-Mail:  edwardt@bdfgroup.com
E-Mail:  masumijp@bdfgroup.com

*Attorneys for Defendant*
NDEX WEST, LLC,
also known as DOE 1

***Served Via Federal Express***